1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW H. BECKETT,                    Case No. 1:20-cv-01468-CDB (PC)

12               Plaintiff,                  **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR APPOINTMENT OF**
13        v.                                 **COUNSEL AND A COMPETENCY**
                                             **HEARING**
14   SCALIA, *et al.*,

15               Defendants.                 (Doc. 75)

16                                           **ORDER GRANTING PLAINTIFF'S**
                                             **REQUEST FOR EXTENSION OF TIME**
17                                           **AND MODIFYING DISCOVERY AND**
                                             **SCHEDULING ORDER**
18
                                             (Doc. 76)
19

20                                           **ORDER DENYING PLAINTIFF'S**
                                             **MOTION TO AMEND THE COMPLAINT**
21

22                                           (Doc. 78)

23

24        Plaintiff Matthew H. Beckett is a former state prisoner and current civil detainee

25   proceeding pro se and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983.[1]

26

27   ---

     [1] Following the parties' expression of consent to the jurisdiction of a United States Magistrate Judge for all further
28   proceedings in this action, pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned for all
     further proceedings, including trial and entry of judgment, on November 4, 2024. (*See* Doc. 74 [Order Reassigning
     the Action issued by District Judge Jennifer L. Thurston].)

This action proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendants Scalia, Madrigal and Hernandez and failure to protect/failure to intervene claims against Defendant Hackworth, and Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Scalia, Madrigal, Hernandez, Hackworth, and Hurtado. (*See* Doc. 39.)

## I.       INTRODUCTION

The Court issued its Discovery and Scheduling Order on October 24, 2024. (Doc. 71.)

On November 25, 2024, Plaintiff filed a motion seeking the appointment of counsel and a competency hearing. (Doc. 75.)

On December 16, 2024, Plaintiff filed a motion seeking an extension of the deadline for amending his complaint. (Doc. 76.)

On January 2, 2025, Plaintiff filed a motion to amend his complaint (Doc. 78) and a document titled "Plaintiff – patient recognition status" (Doc. 79).

## II.      DISCUSSION

### *Appointment of Counsel and a Competency Hearing (Doc. 75)*

Initially, the Court addresses Plaintiff's statement that "[t]his case has sustained summary judgment, showing there is merit …." Plaintiff is mistaken. His claims have proceeded past screening, but the merits of his claims have not been tested. Motions for summary judgment, if any, are to be filed after the completion of discovery.

Next, briefly stated and summarized, Plaintiff contends the following amount to exceptional circumstances warranting the appointment of counsel:

1. He is "currently considered mentally incapacitated, deemed insane" by the Kings County Superior Court;

2. He lacks the ability to investigate, conduct adequate written discovery, and to take depositions;

3. He expects "conflicting evidence leading to the need for cross examination;"

4. He is indigent and inexperienced in the law;

5. He believes a "mistake" has been made because he intended to sue defendants in their individual and professional capacities,[2] and the Court failed to respond to his statement that he does not "understand the defense of qualified immunity;"

6. He has a developmental learning disability and a severe mental health diagnosis, impairing his abilities;

7. The case is complex given his abilities and comprehension;

8. As a patient at Atascadero State Hospital he is severely disadvantaged as opposed to "the average person in regards to mental stability;"

9. His incoming mail is "frequently misplaced" and given to other patients;

10. He has been allowed "0 hours of study time" and no physical access to the law library.

The Court notes it has previously considered Plaintiff's pro se status, incarceration, mental disability, indigency, lack of legal education, limited access to the law library, and the fact an attorney is better equipped to litigate this type of case. (*See* Doc. 61 at 3.) The Court has reviewed Plaintiff's instant motion anew and finds, as it has before, that those bases do not amount to exceptional circumstances warranting the appointment of counsel. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997).

Next, to the extent Plaintiff contends the state court's "deem[ing him] insane" amounts to an exceptional circumstance, the Court is not persuaded. California Penal Code section 1026 applies to state criminal proceedings. This Court is not bound by the state court's determination regarding Plaintiff's competence to stand trial as it relates to the appointment of counsel. "An incapacitating mental disability may be grounds for appointment of counsel in some cases, but a plaintiff making the argument must present substantial evidence of incompetence." *Meeks v. Nunez*, No. 13cv973-GPC(BGS), 2017 WL 476425, at *3 (S.D. Cal. Feb. 6, 2017) (citing *McElroy v. Cox*, No. 08-1221 JM (AJB), 2009 WL 4895360 at *2 (E.D. Cal. Dec. 11, 2009)).

Here, Plaintiff has provided a copy of his Department of State Hospitals – Atascadero Treatment Plan in support of his motion. (Doc. 75 at 16-29 [Exhibit B].) It includes a list of 22

---

[2] See discussion below concerning suits naming defendants in their official and individual capacities.

3

1   diagnoses, including, but not limited to: Bipolar I disorder, post traumatic stress disorder,

2   borderline personality disorder, unspecified mood disorder, amphetamine-type substance use

3   disorder, and opioid use disorder. (*Id*. at 16.) Relevant here, under the heading "COGNITIVIE

4   FUNCTIONING," the entry reads: "No information at this time." (*Id*. at 17.) Under the heading

5   "Recommended Plans for Management," it is noted that Plaintiff's Borderline Personality

6   Disorder "contributes significantly to his defiance, reactivity, and emotional dysregulation." (*Id*.

7   at 19.) Under the hearing "SELF HARM/SUICIDE RISK," in July 2024, Plaintiff "reported

8   experiencing 'vulnerabilities,' which he attributed to the loss of a friend, legal stress, and his

9   hospitalization, he did not express or display any overt signs of depression." (*Id*. at 20.) The

10  psychiatric treatment goals are noted to be: "Maintain safety. Psychiatric stabilization to support

11  improved insight/skills-based learning/improved impulse control sufficient to lead to step-

12  down/discharge from hospital/ICF level of care. Dispo planning." (*Id*. at 22.)

13      On July 17, 2024, Plaintiff's current psychiatric status includes the following remarks:

14  "Mr. Beckett presented with euthymic mood and congruent affect. He demonstrated linear and

15  coherent thought processes and future oriented thinking. No evidence of responding to internal

16  stimuli or delusional thought content was noted .... Speech was normal in rate, tone, and volume.

17  He maintained appropriate eye contact. Mr. Beckett was cooperative, polite, and engaged. He

18  denied thoughts to harm himself and others .... When asked about his mood, he stated 'I am

19  pretty good. Had a little run of bad luck recently with a fellow patient, but I am trying to put my

20  best foot forward;'" and "Mr. Beckett remained compliant with his psychiatric medications

21  without the need of an involuntary medication order." (*Id*. at 23.) A significant portion of the

22  treatment plan documents Plaintiff's violence toward and interpersonal conflicts with other

23  patients and staff at the state hospital. (*Id*. at 17-20, 22-23.) The Court notes Plaintiff's treatment

24  team includes Psychiatrist Anup Sidhu and Psychologist Jacquelyn Norris. (*Id*. at 29.)

25      While Plaintiff has provided the Court with additional information concerning his alleged

26  mental disabilities and disorders, this evidence is insufficient to warrant the appointment of

27  counsel or a competency hearing. There is no indication from the information provided to the

28  Court that Plaintiff's mental disorders affect his cognitive functioning or that there exists a nexus

between his diagnoses and his ability to prosecute this action. *See Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005); *Meeks*, 2017 WL 476425, at *3 (plaintiff did not submit documentation demonstrating "the effects of his diagnosis on the prosecution of this case"); *Fletcher v. Quin*, No. 3:15-cv-2156-GPC-NLS, 2018 WL 840174 at *2 (S.D. Cal. Feb. 13, 2018) ("The court must be able to find a nexus between the mental health disorder and the plaintiff's ability to articulate his claims. [] Here, Plaintiff has not submitted any medical evidence to substantiate the scope of mental impairment"). Plaintiff is advised that documentation directly from his treating psychiatrist or psychologist, *specifically addressing the nature or effect of his mental disorders on his ability to prosecute this case*, to establish the required nexus, should he elect to provide such evidence moving forward, would be considered by the undersigned. Otherwise, this Court has repeatedly denied Plaintiff's requests for the appointment of counsel and a competency hearing and will summarily deny repetitive motions seeking same.

Concerning Plaintiff's statement that the Court failed to respond to his request concerning the defense of qualified immunity, Plaintiff is advised that defendants may properly assert affirmative defenses in an answer to a complaint. One such affirmative defense is the defense of qualified immunity. Presuming this action reaches the stage where Defendants formally assert the defense of qualified immunity, such as in a motion for summary judgment,[3] the legal standards applicable to the defense of qualified immunity will be addressed. In the meantime, Plaintiff may wish to begin to familiarize himself with the following cases: *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Otherwise, the Court does not provide legal advice to litigants. *See, e.g.*, *Mansour v. Luken*, No. 1:22-cv-01054-JLT-EPG (PC), 2023 WL 2992979, at *1, n.1 (E.D. Cal. Apr. 18, 2023); *Mills v. Jones*, No. 1:23-cv-00134-ADA-EPG (PC), 2023 WL 2645667, at *2, n.1 (E.D. Cal. Mar. 27, 2023); *Foust v. Kuku-Ojo*, No. 2:16-cv-2731 WBS AC P, 2020 WL 2112114, at *4 (E.D. Cal. May 4, 2020).

Lastly, to the extent Plaintiff's motion states an objection to the dismissal of another action pending in this Court, *Beckett v. Moreno, et al.*, case number 1:20-cv-01427, Plaintiff is

---

[3] Presently, the deadline for the filing of a motion for summary judgment is September 5, 2025.

1  advised his objections must be made in that action. Further, any claims concerning Plaintiff's

2  legal mail must be asserted in a new action as those claims are unrelated to the claims alleged in

3  this action. *See* Fed. R. Civ. P. 18.

4      In sum, Plaintiff's motion for the appointment of counsel and a competency hearing will

5  be denied.

6              ***The Request to Modify the Discovery and Scheduling Order***

7      Plaintiff seeks to extend the deadline for filing a motion to amend his complaint by 30

8  days. Defendants did not oppose this request.

9      The current deadline for filing a motion to amend pleadings will be extended by 31 days

10  from Friday, January 24, 2025, to Monday, February 24, 2025. No other deadlines will be

11  modified.

12                      ***The Motion to Amend (Doc. 78)[4]***

13      Plaintiff seeks to amend his complaint to name the California Department of Corrections

14  and Rehabilitation (CDCR) and the Acting Warden at California State Prison, Corcoran, as

15  defendants. Further, Plaintiff seeks to sue the defendants in their official capacities, as well as

16  their individual capacities.

17      Rule 15 of the Federal Rules of Civil Procedure provides, in pertinent part:

18          (a) Amendments Before Trial.

19          (1) Amending as a Matter of Course. A party may amend its pleading
20          once as a matter of course no later than:

21          (A) 21 days after serving it, or

22          (B) if the pleading is one to which a responsive pleading is required,
            21 days after service of a responsive pleading or 21 days after service
23          of a motion under Rule 12(b), (e), or (f), whichever is earlier.

24          (2) Other Amendments. In all other cases, a party may amend its
            pleading only with the opposing party's written consent or the court's
25          leave. The court should freely give leave when justice so requires.

26

27

28  _____
    [4] The Court finds a response by Defendants to be unnecessary.

Fed. R. Civ. P. 15(a). Here, because Defendants have answered Plaintiff's operative complaint, and more than 21 days have passed, Plaintiff must have the consent of the opposing parties or the Court's leave.

The Discovery and Scheduling Order provides a deadline of January 24, 2025, to amend pleadings. (Doc. 71 at 1, 2.) Plaintiff's motion for leave to file an amended complaint is therefore timely. Nevertheless, amendment would be futile, as explained below.

Plaintiff seeks to name the CDCR as a defendant in this action. However, a suit against CDCR is barred by the Eleventh Amendment. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override ...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal*., 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation & citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court ...." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Therefore, granting Plaintiff leave to amend his complaint to name CDCR as a defendant in this action would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

Plaintiff also seeks to name the acting warden at California State Prison, Corcoran, as a defendant in this action. Plaintiff does not explain why he seeks to do so, only stating he did not know the individual's name at the time he filed his complaint and that he wishes "to include … the acting warden … for the time of the complaint (2108)." As the previous screening orders have advised (*see* Doc. 17 at 7-8 & Doc. 29 at 3-4), liability may not be imposed on supervisory

7

1   personnel for the actions or omissions of their subordinates under the theory of respondeat

2   superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *see e.g., Simmons v. Navajo Cty., Ariz.*,

3   609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named

4   supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that

5   subordinate did"), *overruled on other grounds by Castro v. Cnty. of Los Angeles,* 833 F.3d 1060,

6   1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person

7   acting under color of state law to be liable under section 1983 there must be a showing of

8   personal participation in the alleged rights deprivation: there is no respondeat superior liability

9   under section 1983").

10      Supervisors may be held liable only if they "participated in or directed the violations, or

11   knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1iq040, 1045

12   (9th Cir. 1989). "The requisite causal connection may be established when an official sets in

13   motion a 'series of acts by others which the actor knows or reasonably should know would cause

14   others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

15   Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based

16   on inaction in the training and supervision of subordinates).

17      Supervisory liability may also exist without any personal participation if the official

18   implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

19   rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

20   F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

21   *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970). To prove liability for an action or policy,

22   the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom

23   established by a ... policymaker possessed with final authority to establish that policy." *Waggy v.*

24   *Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a

25   supervisory position, the causal link between such defendant and the claimed constitutional

26   violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

27   Vague and conclusory allegations concerning the involvement of supervisory personnel in civil

28   rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Because Plaintiff fails to explain how the acting warden may be liable, and because Plaintiff has been provided previous opportunities to amend his complaint, his motion will be denied. If Plaintiff can show that any claim or claims against the acting warden meet the standards for supervisory liability given above, he may renew his motion on that basis.

Next, turning to the issue of official and individual capacity suits, Plaintiff seeks to sue the named defendants in their official or "professional" capacities, in addition to their individual capacities. Plaintiff has named Scalia, Madrigal, Hernandez, Hackworth, and Hurtado as defendants in the action. At present, his claims against those individuals proceed as to their individual capacities. As Plaintiff was advised in the Second Screening Order issued June 3, 2022, a state official may be a proper defendant for purposes of an official capacity suit involving a claim for prospective injunctive relief. (*See* Doc. 17 at 8.) *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 92 (1989); accord *Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity) (citation omitted). The operative second amended complaint seeks money damages in addition to the following: "that CSP-Corcoran's Restricted Housing units have cameras installed as well as body cameras. Also CDCR shall place emergency relief statutes in place for prisoners reporting 'safety concerns' against 'CDCR staff' or requesting 'staff separation.'" Assuming Plaintiff's second amended complaint seeks prospective relief, Plaintiff fails to indicate how any of the named defendants — Scalia, Madrigal, Hernandez, Hackworth, and Hurtado — would be properly sued in their official capacities. In other words, how those individuals have the authority to implement the relief he requests. *Will*, 491 U.S. at 92; *Rouser*, 707 F. Supp. 2d at 1066. Because Scalia, Madrigal, Hernandez and Hurtado are correctional officers, and Hackworth is a correctional lieutenant, it is unlikely those individuals would have the authority to order that cameras be employed in the restricted housing unit, or that "emergency relief statutes" be placed there. Therefore, Plaintiff's motion to amend his complaint to name Defendants Scalia, Madrigal, Hernandez, Hackworth, and Hurtado, in their official capacities, will be denied as futile. *Hartmann*, 707 F.3d at 1130.

In sum, Plaintiff's motion to amend his complaint will be denied. Plaintiff may not name CDCR as a defendant in the action, nor may he sue the presently named defendants in their official capacities. To the extent Plaintiff wishes to pursue a claim or claims against the acting warden at California State Prison, Corcoran, in this action, he may renew his motion on that basis assuming he can establish liability in accord with the legal standards concerning supervisory liability provided above.

### III.    CONCLUSION AND ORDER

Accordingly, and for the reasons discussed above, the Court **HEREBY ORDERS** as follows:

1. Plaintiff's motion to appoint counsel and for a competency hearing (Doc. 75) is **DENIED**;

2. Plaintiff's motion for an extension of time (Doc. 76) is **GRANTED**;

3. The Discovery and Scheduling Order (Doc. 71) is **MODIFIED** to extend the deadline for the filing of a motion to amend pleadings from January 24, 2025, to **February 24, 2025**; and

4. Plaintiff's motion to amend the complaint (Doc. 78) is **DENIED**.

IT IS SO ORDERED.

Dated:   __**January 10, 2025**__                    _____

UNITED STATES MAGISTRATE JUDGE